IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DARRYL SCOTT STINSKI, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No: 5:14-cv-00409 (MTT)(CHW) |
| | : | |
| BRUCE CHATMAN, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |

### REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants Baucomb, Chatman, Eutsey, Harrell, Miller, and Pierly. Doc. 18. Because Plaintiff has failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED** (Doc. 18), and that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**. It is further **RECOMMENDED** that Plaintiff's Motion for Legal Supplies (Doc. 21) be **DENIED as MOOT**.

### BACKGROUND

On November 24, 2014, Plaintiff filed a complaint bringing claims for violations of Plaintiff's right to: (1) religious freedom under the First Amendment to the United States Constitution and Section 3 of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1; (2) equal protection under the Fourteenth Amendment's Equal Protection clause; (3) due process under the Fourteenth Amendment's Due Process Clause; as well as a request for an injunction against "retaliatory action" prohibited by the First Amendment. See Doc. 1. The Court dismissed Plaintiff Darryl Scott Stinski's Complaint under 28 U.S.C. § 1915A(a) for failure to state a claim. Docs. 1; 5; 6. Plaintiff, who is presently incarcerated at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a motion for

reconsideration and sought leave to file an amended complaint. Docs. 7, 8. The Court granted Plaintiff permission to file an amended complaint and stayed the motion for reconsideration pending review of the amended complaint. Doc. 11.

Plaintiff's amended complaint further detailed Defendants' alleged Section 1983 violations related to the practice of Plaintiff's Wiccan religion. Specifically, Plaintiff contends that he requested candles, incense, a censer, essential oils, candleholders, a cup or chalice, a "patan" (described as a flat wooden "magical tool"), a wand, an altar cloth, a box to store his religious items that could also double as an altar, a set of rune stones, parchment and ink, multiple medicine bags containing stones, charms, and amulets, a necklace with a scent locket, salt, and "various other tools."   Doc. 12-1, pp. 3-4, 6-9. He also requested that he be allowed to observe the "Cakes and Wine" ceremony and sought one ounce of wine (or grape juice) and cake, cookies, or sandwich to complete the ritual.  *Id.* at 7.   Plaintiff additionally requested contact information for a "religious rights review committee" and a Wiccan chaplain or community volunteer.  *Id.* at 9. Plaintiff also asked that he be allowed to grow his hair in accordance with his religious beliefs and that he be permitted to use areas in the G-House commonly referred to as the "barber shop" and the "computer room" to practice his religion.  *Id.* at 4, 10.  Plaintiff contends that each of these requests was denied by prison officials, specifically Defendants Chatman and Miller.  *Id.* at 6-10. Plaintiff also alleges he was forcibly shaved by prison officials and was served a disciplinary report for failing to follow prison officials' directions to shave and for his "personal appearance." *Id.* at 11-12.   Plaintiff further alleges that he has not received books he has ordered about his religion in a timely manner.  *Id.* at 15.

Plaintiff also alleges that he was taken to the "computer room" and strip-searched by CERT team members and that his cell was "utterly destroyed" by CERT team members in the

2

meantime. *Id.* at 13. Plaintiff states that he was "infracted" on or about July 11, 2014 and received thirty days in isolation as a result of the infraction. *Id.* at 13-14. After he served his thirty days in isolation, he was held in segregation for an additional twenty days. *Id.* at 14. Plaintiff contends these actions by prison officials were retaliatory, since he "had done nothing to warrant this mistreatment . . . other than filing grievances and trying to be afforded religious rights, privileges, and immunities." *Id.*

Following an initial screening under 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed with his religious freedom claims against Defendants Chatman, Miller, Eutsey, Baucomb, Harrell, and Pierly; his equal protection claims against Defendants Chatman, Miller, and Harrell; and his retaliation claims against Defendants Chatman, Miller, and Eutsey.

## EXHAUSTION

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside

of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

Also important to this specific case, "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Thus, even if Plaintiff exhausted his administrative remedies after he filed his complaint, the Court cannot take action on those claims. See 42 U.S.C. § 1997e(a).

4

## AVAILABLE ADMINISTRATIVE REMEDIES

During the period relevant to this case, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 18-3, pp. 2–16. At step one, a prisoner wishing to file a grievance is required to file no later than 10 calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.*, p. 8. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id.* The Warden must respond within 40 days. *Id.*, p. 11. If this initial grievance is rejected, the prisoner is required to appeal within 7 calendar days. *Id.*, p. 12. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id.*

The Standard Operating Procedure also notifies inmates that they are limited to two active grievances at any one time. *Id.* at 7. If an inmate has more than two active grievances, the procedure states that the inmate must drop one of the outstanding active grievances being processed in order to file a new grievance. *Id.* There are three exceptions to the two active grievance limit if the grievance: (1) is filed as an emergency grievance and is determined to be an emergency grievance by the Grievance Coordinator; (2) involves allegations of physical abuse with significant injury to the inmate or sexual assault; or (3) involves an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person. *Id.*

## ANALYSIS

Defendants are entitled to dismissal at step one of the *Turner* analysis. Plaintiff's complaint states that Plaintiff filed a grievance (Doc. 12, p. 3), that he appealed the grievance (Doc. 12, p. 4), and that the appeal was denied (*Id.*). Plaintiff further lists twelve separate grievances that he has filed with GDCP. See Doc. 12-3. Plaintiff's self-reported grievance history, set forth below, shows that any grievances Plaintiff filed related to denial of religious materials

5

and services or to retaliation were not fully exhausted at the time he filed his complaint, on November 24, 2014.

Plaintiff's history shows that he filed a number of grievances before November 24, 2014, that were not related to his claims in this case. On March 5, 2014 Plaintiff filed Grievance Number 168387 complaining about a time delay in receiving GDOC Standards of Procedure. Plaintiff appealed the Warden's response on April 7, 2014, and on May 6, 2014, the Central Office "received no further action." Doc. 12-3, p. 1. On August 6, 2014, Plaintiff filed Grievance Number 178947 about Defendant Miller's "lack of response to second meeting." *Id.* Although Plaintiff's amended complaint is vague as to the subject matter of this complaint, Plaintiff's response presents a copy of Grievance Number 178947. Doc. 22-3. The grievance complained that Plaintiff talked to Defendant Miller about "Wiccan Materials" and that Plaintiff "received no response." Doc. 22-3, p. 4. The documents presented by Plaintiff further show that the Warden denied Plaintiff's grievance, finding that Defendant Miller and Piercy "both state they spoke with [Plaintiff] about the religious items he is allowed to receive inside the institution." Doc. 22-3, p. 3. Plaintiff appealed the denial on September 2, 2014, which was denied on October 15, 2014. Doc. 22-3, p. 1. On August 6, 2014, Plaintiff also filed Grievance Number 178944 contending that the current grievance procedure was not being followed. *Id.* Plaintiff states that he had to drop the grievance on August 26, 2014, "for another to go through." *Id.*

In late August 2014, Plaintiff began to file a number of grievances that are arguably related to the claims in this suit. None of these grievances, however, was fully exhausted by the time he filed his complaint. On August 23, 2014, Plaintiff filed Grievance Number 180086 complaining that Defendant Harrell did not provide addresses to Plaintiff of local covens. *Id.* On

6

September 29, 2014, Plaintiff received a denial from the Warden. *Id.* at 2. On October 1, 2014, Plaintiff appealed the warden's denial, which was also denied on December 8, 2014. *Id.* On August 28, 2014, Plaintiff filed Grievance Number 180910 complaining that he was being retaliated against for filing too many grievances and being Wiccan. *Id.* Plaintiff's grievance was denied by the Warden on September 25, 2014. *Id.* On September 28, 2014, Plaintiff appealed, but Plaintiff's appeal was denied on November 25, 2014 because Plaintiff filed his appeal "later than 10 days" after he received the Warden's denial *Id.*

On November 12, 2014, Plaintiff filed Grievance Number 185419. *Id.* at 2. Plaintiff states that this grievance was denied because his "provided material" had arrived. *Id.* at 3. However, Plaintiff received a ten (10) day extension memo on January 5, 2015, which was denied on January 12, 2015 because Plaintiff received a rejection form. *Id.* Plaintiff appealed the denial, which Plaintiff indicates is still pending. *Id.*

Also on November 12, 2014, Plaintiff filed Grievance Number 185499 complaining that Defendant Miller was limiting the religious items Plaintiff could receive. *Id.* On December 30, 2014, Plaintiff received a ten day extension memo for Grievance Number 185499. *Id.* On January 12, 2015, Plaintiff received a denial from the Warden, stating that Plaintiff did not provide enough information. *Id.* Plaintiff filed an appeal on January 15, 2015, and has not received a response. *Id.*

On November 24, 2014 Plaintiff filed an emergency grievance regarding the lack of response to his letter about facial hair and head hair growth due to religious beliefs. *Id.* On December 1, 2014, Plaintiff received a response stating that due to Plaintiff's previous two grievances still pending, and that his situation was not an emergency, the grievance was denied. *Id.*

7

On December 9, 2014, Plaintiff filed another emergency grievance that his sink was leaking and was therefore unusable. *Id*. at 4. Plaintiff has not received a response to that grievance. *Id.*

On December 28, 2014, Plaintiff filed an emergency grievance complaining that five CERT members searched his cell and left it "in complete disorder." *Id.* Plaintiff received a response from the Warden that he had two outstanding grievances and asked if he would like to drop one. *Id.* On January 12, 2015 Plaintiff filed a grievance about cell searches, which had yet to be answered at the time Plaintiff filed his response. *Id.* On January 15, 2015, Plaintiff filed another grievance complaining of being forcibly shaved against his religious belief, which was also awaiting response. *Id*.

In determining whether Plaintiff has properly exhausted his claims, the Court categorizes Plaintiff's allegations into three broad claims: Plaintiff's religious freedom claims against Defendants Chatman, Miller, Eutsey, Baucomb, Harrell, and Pierly; the equal protection claims against Defendants Chatman, Miller, and Harrell; and the retaliation claims against Defendants Chatman, Miller, and Eutsey. As shown above, Plaintiff expressly admits that he has not exhausted the grievance process available to him at GDCP prior to filing this lawsuit for his religious claims. The only two grievances filed by Plaintiff concerning religious claims are Grievance No. 180086 specifically grieving the failure of the prison to provide information about local covens; and Grievance No. 185499 specifically grieving the failure of the prison to provide all religious items requested. Because Plaintiff does not claim in his complaint that the failure of the prison to provide information about local covens violated his constitutional rights, that claim is not before the Court. Because Grievance No. 185499 was still pending appeal the day he filed his initial complaint, Plaintiff had not properly exhausted those religious claims prior to filing suit.

8

In his response to Defendants' Motion to Dismiss, Plaintiff argues that "while grievance #185499 was not completely exhausted at the filing of my amended complaint, this point is moot." Doc. 22-1, p. 1. The point is not moot. The PLRA requires a Plaintiff to exhaust remedies *before* a suit is filed. *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Plaintiff further argues that grievance number 178947, which was fully exhausted, concerned the same allegations as grievance number 185499. According to Plaintiff's own exhibits, however, Grievance Number 178947 involves a claim that Defendants never responded to a request "about Wiccan Materials." Doc. 22-3, p. 4. Plaintiff does not present a claim in federal court about Defendants failing to respond to what appears to be a question about what materials Plaintiff is allowed in prison, therefore Plaintiff's argument and evidence still does not show that he properly exhausted his administrative remedies in regards to a religious liberties claim.

Additionally, Plaintiff does not list any grievances related to being denied the ability to celebrate the "Cakes and Wine" Ceremony or the eight Sabbat days, nor any grievances related to being denied access to certain areas of the prison for observing his religion. Further, Plaintiff never contends that he grieved an equal protection claim. And although Plaintiff states in his complaint that he did file a grievance concerning retaliation for "filing too many grievances," Plaintiff states that his appeal was not denied until November 25, 2015, the day after he filed his complaint in this court. Thus, even under Plaintiff's versions of the facts, the complaint shows that Plaintiff has failed to exhaust his administrative remedies as to each claim.

At step two of the *Turner* analysis, the Court must weigh the evidence and make findings of fact. The weight of the evidence supports a finding that Plaintiff did not fully and properly exhaust his administrative remedies.

Defendants first present the Affidavit of Lesley Medlock, the Chief Counselor at the Georgia Diagnostic and Classifications State Prison. Doc. 18-2, p. 3. Ms. Medlock oversees the Inmate Grievance Procedure and regularly receive, review and process Inmate Grievance Forms and documents regarding grievances in the ordinary course of business. *Id.* Ms. Medlock also reviewed Plaintiff's grievance history, which is also in the record, and reveals that Plaintiff has in fact filed forty-four (44) grievances as of August 18, 2015. *Id.* at 8. Ms. Medlock specifically discussed Grievance No. 185499, alleging that GDCP employees were denying him religious items from multiple religions when he was "required to pick only one religion" *Id.* at 8. The grievance was denied at the prison level on December 31, 2014 on the grounds that Plaintiff was only entitled to obtain religious items from one religion. *Id.* at 9. On May 1, 2015, on appeal, the grievance was fully granted. *Id.* This record is consistent with Plaintiff's complaint, in that his grievance was still pending when he filed his original complaint.

Defendants also present the Georgia Department of Corrections Standard Operating Procedure for the Statewide Grievance Procedure (Doc. 18-3), which has been detailed above; Plaintiff's grievance history (Doc. 18-4); and Grievance No. 185499 (Doc. 18-5). All the evidence presented by Defendants is consistent with Plaintiff's recitation of the facts, and shows that Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies as his grievance regarding denial of religious items was still pending on the date of he filed his complaint.

Therefore, because the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90, 93–97 (2006), and because the Defendants have met the burden of demonstrating that Plaintiff did not fully exhaust his administrative remedies before he filed his Section 1983 claims, it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**.

10

**LEGAL SUPPLIES**

Also before the Court is the Motion to Permit Counsel to Supply Legal Supplies filed by Plaintiff. Doc. 21. In the Motion, Plaintiff states that the prison has confiscated legal supplies sent to him by counsel in his capital felony case. Doc. 21, p. 1. Plaintiff states that without his legal supplies, specifically one pen, three envelopes, and three sheets of paper, he is unable meet the legal needs. Plaintiff then requests that the court order the prison to permit Plaintiff to receive legal supplies. Doc. 21-2. Plaintiff filed a thirty-seven page response contemporaneously with the Motion for Legal Supplies. Plaintiff's Motion appears to be an access to courts claim, and indeed, Plaintiff cites cases related to an access to courts claim in his accompanying memorandum. See Doc. 21-1. However, Plaintiff also admits that he has not exhausted this claim, and does not wish to add this issue to his pending civil action as a claim of its own. Doc. 21, p. 2.

In light of Plaintiff's intention not to add an access of courts claim to his case, and considering the recommendation to dismiss Plaintiff's claims without prejudice, it is also **RECOMMENDED** that Plaintiff's Motion for Legal Supplies be **DENIED**.

**CONCLUSION**

Because Plaintiff has failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED** (Doc. 18), and that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**. It is further **RECOMMENDED** that Plaintiff's Motion for Legal Supplies (Doc. 21) be **DENIED as MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other

portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 21st day of October, 2015.

                                            s/ Charles H. Weigle
                                            Charles H. Weigle
                                            United States Magistrate Judge